# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

NANCY J. ZELLER-LANDAU, :
    Plaintiff, :
   : CIVIL ACTION
v. : NO. 17-3962
   :
STERNE AGEE CRT, LLC, et al., :
    Defendants. :

**January 9, 2018**                                                                                                                 **Anita B. Brody, J.**

## **MEMORANDUM**

Plaintiff Nancy J. Zeller-Landau brings suit against Defendants Sterne Agee CRT, LLC ("Sterne Agee CRT"), CRT Capital Group, LLC ("CRT"), CRT Greenwich, LLC ("Greenwich"), and Aquiline Capital Partners, LLC ("Aquiline").[1] Zeller-Landau alleges that Defendants subject her to sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206 *et seq*. I exercise federal question jurisdiction over Zeller-Landau's Title VII and Equal Pay Act claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Zeller-Landau's PHRA claim pursuant to 28 U.S.C. § 1367. CRT moves to compel arbitration and to stay proceedings based on an arbitration provision in its Employment Agreement with Zeller-Landau. For the reasons set forth below, I will grant CRT's motion to compel arbitration and to stay proceedings.

---

[1] In the Complaint, Zeller-Landau refers to CRT Capital Group, LLC and CRT Greenwich, LLC as a single Defendant. In their briefs, however, the parties treat them as two separate Defendants. Although Zeller-Landau identifies Sterne Agee CRT, LLC as a Defendant, Defendant CRT Capital Group, LLC represents that "Sterne Agee CRT, LLC, does not and has never existed as a separate corporate entity. Rather, 'Sterne Agee CRT' was a trade name used temporarily by CRT." CRT's Mem. 5, ECF No. 8-1.

## I. BACKGROUND[2]

In the fall of 2010, Zeller-Landau began working for Sterne Agee, Group, Inc. ("Sterne Agee Group") as a Managing Director in the West Conshohocken, PA office (the "Conshohocken Office"). Compl. ¶ 10. In March 2015, Aquiline, CRT, and Greenwich purchased Sterne Agee Group and the new company became known as Sterne Agee CRT. Compl. ¶ 11. Accordingly, in March 2015, Zeller-Landau agreed to enter into an Employment Agreement with CRT. CRT's Mem. Ex. A, at 9, ECF No. 8-2 [hereinafter Agrmt.]. In April 2015, the Employment Agreement became effective. Agrmt. 9. The Employment Agreement contains the following arbitration provision:

> FINRA arbitration shall be the exclusive means of, and forum for, resolving any claim, dispute or controversy that arises out of or that relates to Employee's employment with Employer or the termination of that employment, including without limitation any compensation claim, claim for breach of contract, tort claim or any claim for harassment, failure to prevent harassment, retaliation, wrongful termination or intentional infliction of emotional distress.

Agrmt. § XIII.F.

Zeller-Landau is female. Compl. ¶ 9. Throughout her employment with Sterne Agee Group and Sterne Agee CRT, the vast majority of Zeller-Landau's similarly situated coworkers were male. Compl. ¶ 20. From 2014 until March of 2016, Zeller-Landau earned $39,583.00 per month. Compl. ¶¶ 15, 18. In March 2016, the method for compensating Zeller-Landau changed. Compl. ¶ 18. As a result, Zeller-Landau's pay was reduced from $39,583.00 per month to

---

[2] Neither party disputes the validity of the Employment Agreement and the arbitration provision contained within the agreement. All facts are taken from the Complaint and the Employment Agreement between CRT and Zeller-Landau because the motion to compel arbitration will be resolved under a motion to dismiss standard. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) ("Because the arbitration clause at issue appears in a contract relied upon in the Complaint, we resolve the motion to compel arbitration under a motion to dismiss standard . . . . We are also permitted to consider the substance of the contracts that ostensibly compel arbitration."); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (explaining that under a motion to dismiss standard a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.")

approximately $10,000.00 per month.  Compl. ¶ 18.   In April 2016, Zeller-Landau learned that when Sterne Agee Group became Sterne Agee CRT similarly situated coworkers, the vast majority of whom were men, were paid substantial retention bonuses, even though a bonus was never provided to Zeller-Landau.  Compl. ¶ 16.  During her employment, Defendants paid Zeller-Landau substantially less than her male counterparts.  Compl. ¶ 19.

On June 23, 2016, CRT notified Zeller-Landau that it was closing the Conshohocken Office and that Zeller-Landau was being laid off from her employment.  Compl. ¶ 22. Zeller-Landau was offered a severance package based on her reduced monthly compensation of $10,000.00 per month.  Compl. ¶ 23.  Zeller-Landau's male counterparts were offered substantially more compensation in their severance packages than Zeller-Landau was offered. Compl. ¶ 24.

Zeller-Landau alleges that "Defendants treated male employees more favorably when it came to compensation, benefits, work assignments and career advancement."  Compl. ¶ 26.

On September 5, 2017, Zeller-Landau filed this Complaint, alleging that Defendants subject her to sex discrimination in violation of Title VII, the PHRA, and the Equal Pay Act. CRT now moves to compel arbitration and stay the proceedings based on the arbitration provision in its Employment Agreement with Zeller-Landau.

## II.  DISCUSSION

CRT moves to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").[3]  The FAA "creates a body of federal substantive

---

[3] CRT moves to compel arbitration and stay proceedings pursuant to sections 3 and 4 of the FAA. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or

law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "In particular, the FAA provides that as a matter of federal law '[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted).

"The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* at 523. "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey &*

---

> proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4 of the FAA provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "[I]t makes no practical difference whether the court enters an order in an ongoing suit compelling arbitration [under § 4] or merely stays its own proceedings [under § 3]. In either event, arbitration is the *sine qua non* before proceeding." *Zosky v. Boyer*, 856 F.2d 554, 556 (3d Cir. 1988), *abrogated on other grounds by Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79 (2000).

*Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted).[4] Neither party contests the validity of the Employment Agreement and the arbitration provision contained in the agreement. The sole question is whether Zeller-Landau's sex discrimination claims fall within the scope of the Employment Agreement's arbitration clause.

"[T]he fact that the parties have agreed to arbitrate some disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties . . . ." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). "[F]ederal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001). However, "the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls." *CardioNet*, 751 F.3d at 173 (citation omitted).

"Ultimately, then, whether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *Id.* at 172. In making this assessment, the "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic*, 247 F.3d at 55 (quoting *Svedala Indus., Inc. v. Rock Engineered Mach. Co., Inc.*, No. 96-4538,

---

[4] "In the vast majority of cases, the arbitrability of a dispute is a question for judicial determination. Because neither party questions the propriety of the District Court determining whether the dispute is arbitrable, [I] assume, without further analysis, that the [Employment] Agreement leaves the question of arbitrability to judicial determination." *CardioNet.*, 751 F.3d at 171–72 (citation omitted).

1996 WL 590861, at *3 (E.D. Pa. Oct. 11, 1996)). Moreover, whether a dispute falls within the scope of an arbitration clause is a matter of federal law.[5] *Century*, 584 F.3d at 524.

To determine whether a dispute falls within the scope of an arbitration clause, a court "begin[s] by 'carefully analyz[ing] the contractual language' in the arbitration clause at issue." *CardioNet*, 751 F.3d at 173 (quoting *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 888 (3d Cir. 1992)). The Employment Agreement contains the following arbitration provision:

> FINRA arbitration shall be the exclusive means of, and forum for, resolving any claim, dispute or controversy that arises out of or that relates to Employee's employment with Employer or the termination of that employment, including without limitation any compensation claim, claim for breach of contract, tort claim or any claim for harassment, failure to prevent harassment, retaliation, wrongful termination or intentional infliction of emotional distress.

Agrmt. § XIII.F. CRT contends that Zeller-Landau's sex discrimination claims are not within the scope of the arbitration agreement based on the principle *expressio unius est exclusio alterius*, which means the specific inclusion of one thing is the exclusion of another.[6] CRT

---

[5] Zeller-Landau argues that state law governs the determination of the scope of the arbitration provision. While ordinary state law principles apply to the first prong—whether or not the parties agreed to arbitrate *any* disputes—federal law governs the second prong—whether or not a particular dispute falls within the scope of the arbitration clause. *Century*, 584 F.3d at 524 ("Inasmuch as federal law applies to the interpretation of arbitration agreements, once a court has found that there is a valid agreement to arbitrate . . . the determination of whether a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law.") (internal quotation marks omitted).

[6] Zeller-Landau offers only one example of a case applying this principle in the context of arbitrability. *See Cornell Univ. v. UAW Local 2300, United Auto. Aerospace & Agr. Implement Workers of Am.*, 942 F.2d 138 (2d Cir. 1991). *Cornell*, however, is easily distinguishable from this case. In *Cornell*, the parties entered into a collective bargaining agreement ("Agreement") that contained an arbitration provision that "limit[ed] arbitration solely to those disputes which relate directly to its terms." 942 F.2d at 140. Later the parties entered into a letter of understanding ("Letter") that did not contain an arbitration provision. *Id.* The union sought to arbitrate a matter addressed by the Letter and argued that the parties were required to arbitrate the matter because of the arbitration clause in the Agreement. *Id.* at 140. The Second Circuit held that the Agreement never contemplated the Letter, and applied the principle *expressio unious est exclusion alterius* to conclude that the Letter was collateral to the Agreement. Thus, the dispute regarding the Letter was not subject to arbitration. Unlike in *Cornell*, this case does not involve a collective bargaining agreement. Moreover, the parties do not dispute that the Employment Agreement contains a valid arbitration provision.

argues that because it explicitly included harassment and retaliation as types of claims that are subject to arbitration, its failure to identify sex discrimination as a type of claim subject to arbitration means that the arbitration provision does not cover sex discrimination claims. The arbitration provision, however, does not limit the types of claims covered to those explicitly identified. Rather, the provision requires the parties to arbitrate "any claim, dispute or controversy that arises out of or related to Employee's employment with Employer or the termination of that employment," it then "include[es] without limitation" several types of claims that are subject to arbitration.

"[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction . . . ." *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000). Arbitration clauses that govern any disputes "arising out of or relating to" the parties' agreement or an employee's employment are also considered broad in scope. *See, e.g., DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 475 (W.D. Pa. 2016); *TMG Health, Inc. v. UnitedHealth Grp., Inc.*, No. 07-115, 2007 WL 1258133, at *1 (E.D. Pa. Apr. 27, 2007); *Kane v. Advanced Integrated Techs. Grp., Inc.*, No. 07-269, 2007 WL 1237926, at *4 (E.D. Pa. Apr. 25, 2007); *Hearon v. AstraZeneca LP*, No. 02-3189, 2003 WL 21250640, at *5 (E.D. Pa. Mar. 24, 2003). Additionally, phrases in an arbitration clause such as "arbitrable matters include, but are not limited[] to" are also indicative of an arbitration clause that is broad in scope. *See Chassen v. Fidelity Nat'l Fin., Inc.*, 836 F.3d 291, 304 (3d Cir. 2016); *Cf. United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d Cir. 2008) ("Cases holding that the arbitration clauses at issue are narrow have generally relied on language expressly limiting the scope of the clause to specific subject matter."). Thus, the arbitration provision contained in Zeller-Landau's Employment Agreement is broad in scope.

Courts within the Third Circuit have held that broad arbitration clauses in employment agreements encompass statutory claims such as the claims raised by Zeller-Landau. *See Esaka v. Nanticoke Health Servs., Inc.*, 752 F.Supp.2d 476, 482–83 (D. Del. 2010) (concluding that Title VII claims fell within the scope of a clause submitting to arbitration "all claims or controversies concerning this Agreement or arising in any way out of the performance of this Agreement"); *Gillespie v. Colonial Life & Acc. Ins. Co.*, No. 08-689, 2009 WL 890579, at *7 (W.D. Pa. Mar. 30, 2009) (concluding that Title VII and PHRA claims fell within the scope of an arbitration clause that required "every claim, controversy or dispute arising out of or related to this Agreement, or the breach thereof, . . . [to] be settled by binding arbitration"); *Hearon*, 2003 WL 21250640, at * 6-7 (concluding that Title VII and PHRA claims fell within the scope of an arbitration clause that required any claim "arising out of or relating to any provision of this Contract or the Employee's termination . . . [to] be settled by arbitration"). All of Zeller-Landau's sex discrimination claims arise out of or relate to her employment with CRT or the termination of that employment. Because the arbitration clause is broad in scope and covers "any claim, dispute or controversy that arises out of or related to Employee's employment with Employer or the termination of that employment," it encompasses Zeller-Landau's sex discrimination claims.

In an effort to avoid this conclusion, Zeller-Landau points out that the arbitration clause mandates "FINRA arbitration [as] the exclusive means of, and forum for, resolving any claim, dispute or controversy," Agrmt. § XIII.F, and contends that arbitration of her sex discrimination claims would violate FINRA arbitration rules.[7] Specifically, Zeller-Landau argues that arbitration of her claims would violate FINRA Rule 13201(a), which provides, in pertinent part: "A claim alleging employment discrimination, including sexual harassment, in violation of a

---
[7] FINRA stands for Financial Industry Regulatory Authority.

8

statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." Zeller-Landau argues that CRT's reference to FINRA arbitration and failure to explicitly list sex discrimination claims in the arbitration provision means that that the parties did not agree to arbitrate them.

In *ING Financial Partners v. Johansen*, 446 F.3d 777 (8th Cir. 2016), the Eighth Circuit addressed a similar argument. In *Johansen*, the employee had signed an agreement that contained the following arbitration clause: "Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration conducted . . . in accordance with the rules of the National Association of Security Dealers, Inc." *Johansen*, 446 F.3d at 778. The National Association of Securities Dealers, Inc. ("NASD") Code of Arbitration Procedure provided, in relevant part: "A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." *Id.* (quoting NASD Code Rule 10201(b)). The employee alleged claims of sex discrimination, sexual harassment, and retaliatory discharge for whistleblowing. *Id.* The employer argued that these claims could not be subject to arbitration because arbitration would violate the NASD rule that prohibited arbitration of employment discrimination claims, unless the parties had agreed to arbitrate them. *Id.* The Eighth Circuit noted that the "arbitration clause was not drafted to specifically limit the agreement to arbitrate to those matters that NASD rules required to be arbitrated, [rather] the reference to the NASD rules appear[ed] to relate only to the manner in which the arbitration shall be conducted, not which matters [were] subject to arbitration" *Id.* at 779. The Eighth Circuit acknowledged that the "broadly worded" arbitration clause indicated that the parties had agreed to arbitrate the employee's employment

discrimination claims. *Id.* at 779. Accordingly, the Eighth Circuit concluded that the employment discrimination claims were subject to arbitration. *Id.* at 779-781.

Similar to *Johansen*, the arbitration clause in the Employment Agreement was not drafted to limit arbitration only to those matters required to be arbitrated by the FINRA arbitration rules. Rather, the parties referenced FINRA arbitration to indicate the forum and means by which arbitration would occur. As previously discussed, the broad arbitration provision covers "any claim, dispute or controversy that arises out of or related to Employee's employment with Employer or the termination of that employment." Although the arbitration clause lists some types of claims covered, it does not limit the types of claims covered to those explicitly identified; rather it includes them as examples "including [them] without limitation" to any other claims that may be covered. Because Zeller-Landau's sex discrimination claims arise out of or relate to her employment with CRT or the termination of that employment, the parties agreed to arbitrate Zeller-Landau's claims when they entered into an Employment Agreement with such a broad arbitration provision.[8] Accordingly, arbitration of these claims complies with FINRA arbitration rules. Therefore, Zeller-Landau's claims are subject to arbitration.

---

[8] To the extent that there is any ambiguity as to whether Zeller-Landau's sex discrimination claims fall within the scope of the arbitration clause, the presumption of arbitrability applies. *CardioNet*, 751 F.3d at 173; *see also Johansen*, 446 F.3d at 780 ("[T]o the extent that the . . . arbitration provision is ambiguous as to the interplay of arbitrating 'any dispute' and the effect of [NASD] Rule 10201(b), the clause must be interpreted to favor arbitration."); *Hearon*, 2003 WL 21250640, at *6 ("Even assuming, *arguendo*, that the scope of the arbitration clause was ambiguous, we would nevertheless be bound by the FAA to resolve any ambiguities in favor of arbitration . . . .").

## III. CONCLUSION

For the reasons set forth above, I will grant CRT's motion to compel arbitration and to stay proceedings.[9]

                                            s/Anita B. Brody

                                            _____
                                            ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:

---

[9] Greenwich and Aquiline also filed motions to stay proceedings pending the outcome of arbitration between CRT and Zeller-Landau. In response to these motions, Zeller-Landau agreed that if this Court were to grant CRT's motion to compel arbitration and stay proceedings, then the entire lawsuit should be stayed pending the outcome of arbitration between CRT and Zeller-Landau. Because I will grant CRT's motion to compel arbitration and to stay proceedings, I will also grant the motions filed by Greenwich and Aquiline to stay the lawsuit.